ROGERS & MAGUIRE, Appellees, v. ELLA IRWIN CHASE *et al.*, Appellants.

Conveyances of Real Estate: CONSTRUCTION: RECORD. C., having purchased certain real estate with funds belonging to the estate of I., conveyed the same to I.'s widow, who, in turn, conveyed it to the executor of I.'s estate. Each of said conveyances purported on its face to convey in the grantor's own right, and there was no indication in either of them that the conveyance was in trust. After the death of I.'s widow, said executor conveyed said land to E. C., R. M., L. M. and E. M., the only surviving heirs of I., jointly; the first of whom, under the laws of descent, was entitled to one half of said property, and the others to the remaining half, but their respective interests were not specified in the deed. Thereafter L. M. and E. M. quitclaimed

their respective interests to R. M., who conveyed to the plaintiffs by deed reciting, that he had granted, bargained, sold, etc., all of his right, title and interest in the property described. *Held*, that the deed to the plaintiffs was in effect a quitclaim deed, and that the plaintiffs took thereunder only the interest of R. M., which was an undivided one half.

*Appeal from   Dickinson   District   Court.*—Hon.  Lot Thomas, Judge.

## Tuesday, October 17, 1893.

Action to partition the west half of section 26, the west half of section 35, and the northwest quarter of the southeast quarter of section 35, township number 99, range 37, in Dickinson county, Iowa.   The land is owned by the plaintiff and the defendant Ella Irwin Chase, and a controversy in the case is as to the extent of their respective interests; the plaintiff firm claiming a three fourths interest, and the defendant a one half interest, and hence the controversy is as to the ownership of the one fourth interest.  Charles D. Chase is the husband of, and a codefendant with, Ella Irwin Chase.  There is no controversy as to the title to the land prior to June 14, 1872, when the Des Moines Valley Railroad Company conveyed it to Charles D. Chase.   The plaintiff's claim is based upon a title following the conveyance to Chase, as follows, as indicated by the records of Dickinson county:

"Fourth.   A deed from Charles D. Chase and wife to Clara C. Irwin; fifth, a deed from Clara C. Irwin to B. H. Ferguson; sixth, a deed from Benjamin H. Ferguson and wife to Ella Irwin Chase, Robert I. Marston, Laura M. Marston and Ella C. Marston; seventh, a deed from Laura M. Marston and Ella C. Marston to Robert I. Marston; eighth, a mortgage from Robert I. Marston to Frank I. Maguire and Nathaniel P. Rogers, Jr. (this is the mortgage held by the appellee, Nathaniel P. Rogers, Sr.); ninth, a deed from Robert

I. Marston to Frank I. Maguire and Nathaniel P. Rogers, Jr."

There is no dispute as to the fact that such conveyances were made, but their legal effect, because of their character, is in question. Robert Irwin died in 1865, leaving a widow, Clara C. Irwin, and two children, viz.: Ella Irwin Chase, the defendant, and Eliza J. Marston. Robert Irwin lived and died in Illinois, and one B. H. Ferguson was the executor of his estate. It is the claim of the defendants, and we think the facts are established by competent evidence, that the purchase of the land by Chase was with money belonging to the estate of Robert Irwin, and for the estate. The land was conveyed by Chase to the widow, Clara C. Irwin, and by her to the executor, Ferguson. No consideration whatever was paid for either of these conveyances, but they were made because each held the land as that of the estate. Clara C. Irwin, the widow, died in 1884, and Eliza J. Marston is also deceased. Eliza J. left three children, Robert I., Laura M. and Ella C. Marston. Some confusion as to facts may be avoided if it is here understood that the heirs of Robert Irwin at this time are the defendant, Ella Irwin Chase, and the three children of her deceased sister, viz., Robert I., Laura M., and Ella C., and under the law of descent the land would go, one half to the defendant, and the other half to the three children of her sister. None of the conveyances in any way indicated on their face that the grantee took the title in trust. The particular character of the conveyances will be noticed in the opinion. On the twenty-third of April, 1888, B. H. Ferguson, executor, conveyed the land to Ella Irwin Chase, Robert I. Marston, Laura M. Marston and Ella C. Marston, jointly; that is, specified no interest as to each. On the fourth day of May, 1888, Laura M. and Ella C. Marston executed to Robert I. Marston a quitclaim deed of their interest in the land.

On the eighth day of May, 1888, Robert I. Marston made to Fank I. Maguire and Nathaniel P. Rogers, Jr., who compose the plaintiff firm, a mortgage of his interest in the land, and on the twenty-second day of the same month he made a deed to them of his interest in the land.   Maguire and Nathaniel P. Rogers, Jr., assigned the mortgage to Nathaniel P. Rogers, Sr., who is a defendant in this case, and he asks to have his mortgage lien attached to whatever interest shall be decreed to belong to the plaintiff.   The district court decreed a three fourths interest in the plaintiffs, and the defendants, except Nathaniel P. Rogers, Sr., appeal.—*Reversed.*

*Parker & Funk*, for appellants.

*Cummins & Wright* and *J. W. Cory*, for appellees.

GRANGER, J.—A controlling question in the case seems to be as to the effect of the condition of the title to the land in Dickinson county.   The fact is beyond question, independent of the record, that the title, as it rested in Ferguson, was in trust for the heirs of Robert Irwin, and that, as such heirs, Ella Irwin Chase, defendant, owned an undivided one half, and the children of Eliza J. Marston the other half, which, upon the conveyance by Laura M. and Ella C. Marston of their interest, vested Robert I. Marston with an undivided one half; and this is what he actually owned when he conveyed his interest to the plaintiffs.   It will be well to now notice the language of the deed as to what it purports to convey.   It is as follows:

"Party of the first part, for and in consideration of the sum of one dollar,   *   *   *   has granted, bargained, sold, aliened, demised, released, conveyed, and confirmed, and by these presents does grant, bargain, sell, alien, demise, release, convey, and confirm, unto the parties of the second part, to their heirs and

assigns, forever, all of the right, title and interest of the party of the first part in and to the west half," etc. (here follows balance of description of premises), "hereby releasing and waiving all his right under the homestead exemption laws of the said state of Iowa, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and also the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the first part, in and to the above described and mentioned property, and every parcel and part thereof, with the appurtenances; to have and to hold all and singular the above mentioned and described premises, together with the appurtenances, unto the said parties of the second part, forever."

The deeds from Chase to Ella C. Irwin, from her to Ferguson, and from him to the heirs, each conveys the interest of the grantor without any specification whatever as to what the interest is. Whatever might be the legal construction upon the language used, the deeds were evidently, at the time of execution, intended by the parties as quitclaim deeds. It should be here stated that each of the deeds referred to from Chase to Robert I. Marston, on its face, purported to convey to the grantee named therein, in his or her own right, the interest specified in the deed; that is, there were no words indicating a trust or representative relationship. It should also be stated that nothing in any conveyance indicates, nor is it in any way apparent of record, that Robert Irwin in his lifetime, or that his estate, was possessed of the land. The evidence as to such interest is exclusively by parol.

There is a dispute of fact as to whether or not Marston, pending the negotiations, represented his

interest to be one half of three fourths.  In view of the conflict in the evidence as given by the witnesses, and the fact, which is quite significant, that such an interest is not specified in the deed, we are of the opinion that the representation of a three fourths interest was not made.

If the decree below is to be sustained, the legal effect is to take a one fourth interest belonging to the defendant Ella Irwin Chase from her, and give it to the plaintiffs, because of the conveyance to them by Robert I. Marston of his interest.  Independent of the record, there could be no claim that the deed by Marston conveyed more than his actual interest, for that is all it purports to convey, conceding it to be more than a quitclaim deed.  The appellees' position, then, is that, having purchased Marton's interest, they had a right to rely on the record for the extent of such interest, which is three fourths.  There are no facts in the case because of which Ella Irwin Chase should be bound by the transaction between Marston and the plaintiffs; that is, no fault is attributable to her by which the plaintiff firm was induced to make the purchase, except, perhaps, that of permitting the records to show as they did.  With a careful review of the authorities cited, we find none sustaining a rule that where one party conveys to another his interest in land, without any specification of a particular interest, the law will infer the extent to be that indicated by the public records.  This deed does not purport to convey an interest "as indicated by the records."  As to the extent of the interest, the deed is not more comprehensive than a quitclaim deed, for it contains precisely the same limitation, being "all of the right, title, and interest" only of the grantor.  The deed is, in legal effect, a refusal to fix an extent of interest, and is accepted with such conditions.  If to the granting clause of the deed were added those of seizin and war-

ranty, under authority, the effect would not extend the grant beyond the actual interest expressed.

In *Hoxie v. Finney*, 16 Gray, 332, there was a conveyance by the defendant of "all his right and title" to certain described premises. The deed contained "covenants that he was lawfully seized in fee of the afore-granted premises; that they were free of all incumbrances, that he had good right to sell and convey the same; and that he would warrant and defend them to the grantees," etc. The action was of contract upon the covenants of warranty, after ejectment under a mortgage lien, and a recovery was denied, the court saying: "A deed of all my right, title, and interest in certain real estate purports to convey merely such right as the grantor had in the land; and, as the grantor conveys his own title only, the general covenants of seizin, * * * and that he will warrant and defend the same against the lawful claims and demands of all persons, are all qualified and limited by the granting clause." That deed is as comprehensive in all respects as the one from Marston, and, in many respects, much more so, and it is there held that the express language of seisin in the deed will not so enlarge or modify the granting clause as to impress the instrument with an intent to convey an absolute interest. See, to the same effect, *Cummings v. Dearborn*, 56 Vt. 441; *Allen v. Holton*, 20 Pick. 458; *Sweet v. Brown*, 12 Metc. (Mass.) 175; *Bowen v. Thrall*, 28 Vt. 382; *Brown v. Jackson*, 3 Wheat. 449. In *Knight v. Campbell*, 76 Iowa, 730, in a conveyance, the granting words are as follows: "Have remised, released, sold, and conveyed and quitclaimed, and by these presents do remise, release, convey, sell, and quitclaim, * * * all the right, title, and interest, claim, and demand, which the said party of the first part have," etc. It is said in the opinion: "It is very apparent, we think, that this instrument is a mere

relinquishment or conveyance of such right or interest in the land as might then remain" in the grantor. "It does not purport to be more than that. The grant is of his right, title, and interest in the premises, and the question whether anything passed by it depends entirely upon whether he then had any right or interest in it." There are many similar cases. The cases turn upon the thought that the language of such a grant manifests the intent of the parties to the instrument, and does not permit the other language in the instruments, indicative of a different intent, to override it. Can it be reasonably claimed, then, that, if the parties, by such language in the instrument, as between themselves, do not enlarge the language of such a grant, the records of the county may operate to do so, and that to the extent of divesting the title of third parties?

This court has, in one or two cases, said that where, in addition to the word "quitclaim," the words "sell and convey" are used in a conveyance, it is not a "mere quitclaim deed." *Sibley v. Bullis*, 40 Iowa, 429; *Willson v. Irish*, 62 Iowa, 260. Without commenting on the significance of the language there used, it is sufficient to say that the expressions in no way militate against the rule of the cases cited. It is sufficient to say that the recording act was designed to protect "purchasers for a valuable consideration without notice," but only to the extent that they are purchasers. It is not the office of the act to in any way enlarge or change the intent of the parties. In this case the intent was, as we have seen, to convey the interest of Marston, and not more. That was a one half interest. The cause will be remanded to the district court for a confirmation of shares on that basis, and the lien of the defendant Nathaniel P. Rogers, Sr., will attach to the share of the plaintiffs. Reversed.